UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SOFIRE HENRY,

                              Plaintiff,                1:23-cv-1124 (BKS/ML)

v.

P.O. KEVIN DOYLE, STATE TROOPERS DINAPOLI,
KATELYN RUFFALO, BACON, AND BRITTANY
SCHURKO-GIULIANO,

                              Defendants.
_____

**Appearances:**

*For Plaintiff:*
Michael H. Sussman
Sussman & Goldman
1 Railroad Avenue, Suite 3
P.O. Box 1005
Goshen, New York 10924

*For Defendant P.O. Kevin Doyle:*
Stephen M. Groudine
Murphy Burns LLP
407 Albany Shaker Road
Loudonville, New York 12211

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

Plaintiff Sofire Henry commenced this action under 42 U.S.C. § 1983, alleging that Defendants P.O. Kevin Doyle and State Troopers DiNapoli, Katelyn Ruffalo, Bacon, and Brittany Schurko-Giuliano violated her constitutional rights under the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment. (Dkt. No. 1). Presently before the Court is Defendant Doyle's motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6). (Dkt. No. 13). The motion is fully briefed. (Dkt. Nos. 15, 16). For the reasons that follow, the motion to dismiss is granted in part and denied in part.

## II.     FACTS[1]

Between 2:00 and 3:00 a.m. on March 29, 2022, "Plaintiff and her boyfriend were eating dinner while parked in a vehicle at the Bridgeview Plaza in the hamlet of Highlands in the Town of Lloyd." (Dkt. No. 1, ¶ 4). "Plaintiff and her boyfriend were at this location doing laundry at a 24-hour Laundromat." (*Id.* ¶ 5). As they ate, "Plaintiff and her boyfriend were drinking from an open can of beer." (*Id.* ¶ 7).

Defendant Doyle approached the driver's side of Plaintiff's vehicle, where Plaintiff was seated with the ignition turned off. (*Id.* ¶¶ 8–9). Plaintiff explained that she and her boyfriend, who are African American, (*id.* ¶¶ 1, 22 ), were "eating dinner and watching a video while waiting for their laundry." (*Id.* ¶ 9). Defendant Doyle "repeated his inquiry," and Plaintiff "responded as she had the first time." (*Id.* ¶ 10). Defendant Doyle's partner approached Plaintiff's boyfriend, and Plaintiff's boyfriend provided Defendant Doyle's partner "with the same information in response to his questions." (*Id.* ¶ 11). Defendant Doyle's partner then requested that Plaintiff's boyfriend exit the vehicle. (*Id.* ¶ 12). Plaintiff's boyfriend "complied and also responded to the further command that he identify himself, providing his name, date of birth and social security number." (*Id.* ¶ 13; *see also id.* ¶ 19). Plaintiff's boyfriend explained that because he was not driving, he had left his wallet with identification at home. (*Id.* ¶ 19).

Plaintiff asked Defendant Doyle "why he and his partner were behaving in this way and what she and her boyfriend had done wrong." (*Id.* ¶ 14). Defendant Doyle explained that Plaintiff

---

[1] The following facts are taken from the allegations in the Complaint. (Dkt. No. 1). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true the legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

and her boyfriend had an open container. (*Id*. ¶ 15). Plaintiff apologized, told Defendant Doyle she would accept an appearance ticket for the open container, and volunteered to take a breathalyzer. (*Id.* ¶¶ 16–17). Defendant Doyle did not administer a breathalyzer but stated his intention to arrest Plaintiff's boyfriend "because he had an open container and was not telling the officer his true identity and was falsely impersonating someone else." (*Id.* ¶¶ 17–18). Plaintiff and her boyfriend "repeatedly explained to the officer that they were eating and watching a video in the car while waiting for their laundry." (*Id.* ¶ 20). "[D]epartmental practice in such circumstances is to write out and serve an appearance ticket on any allegedly offending civilian." (*Id.* ¶ 48).

Defendant Doyle "responded that he intended to take" Plaintiff's boyfriend to jail, and Defendant Doyle's partner handcuffed Plaintiff's boyfriend. (*Id.* ¶ 21). Plaintiff believed that Defendant Doyle was racially profiling her and her boyfriend, and she became upset and started to cry. (*Id.* ¶ 22). Plaintiff "explained to Doyle that she is a pharmacy technician and a phlebotomist and requested that the officer simply provide them with appearance tickets and allow a judge to resolve the situation." (*Id.* ¶ 23). Plaintiff also "appeal[ed] to Doyle to stop over-reacting, explaining that she was a mother, knew right from wrong, had worked as an armed security guard, had a pistol permit and was a law-abiding person." (*Id.* ¶ 24). Plaintiff requested that Defendant call back-up to the scene, "particularly a female officer," as Plaintiff "was extremely uncomfortable with" Defendant Doyle's "aggressiveness." (*Id*. ¶ 25).

Within about fifteen minutes, Defendants DiNapoli, Ruffalo, Bacon, and Schurko-Giuliano arrived at the scene. (*Id.* ¶ 26). After their arrival, Plaintiff "heard defendant Doyle falsely tell [the other Defendants] that she was resisting arrest." (*Id.* ¶ 27). Plaintiff denied resisting arrest and explained that she had remained in the car because she was afraid of

3

Defendant Doyle. (*Id.* ¶ 28). Defendant Doyle then told the other Defendants that Plaintiff might have a gun in the car. (*Id.* ¶ 29).

After Defendant Doyle told the other Defendants that Plaintiff might have a gun in the car, "defendant officers, including Doyle, grabbed plaintiff by her hair, arms, and left leg, pulled her out of the car and threw her headfirst onto the concrete parking lot." (*Id.* ¶ 30). "Two defendants jumped on plaintiff's back[ and] cuffed her as plaintiff exclaimed that she could not breathe." (*Id.* ¶ 31). "As this was transpiring, none of the officers sought to intervene and cause the cessation of the excessive and unnecessary force being used against plaintiff." (*Id.* ¶ 33). Plaintiff sustained "bruises, scrapes, and cuts to the right side of her body and serious injuries to her neck and back" from "being thrown to the ground and held there by several of the defendant officers." (*Id.* ¶ 32).

Defendant Doyle transported Plaintiff and her boyfriend to the Town of Lloyd police station. (*Id.* ¶ 34). At the station, "one of the officers told plaintiff that Doyle was a racist." (*Id.* ¶ 35). While at the station, Defendant Doyle charged Plaintiff with resisting arrest and obstructing governmental administration, and Plaintiff and her boyfriend "received appearance tickets." (*Id.* ¶¶ 36, 39). Afterward, "a police officer drove" Plaintiff and her boyfriend "back to their vehicle and told them to stay out of trouble." (*Id.* ¶ 39).

Plaintiff pled guilty to an open container charge and the two misdemeanors were dismissed. (*Id.* ¶ 37).

The day of the incident, Plaintiff's "body [was] aching," and Plaintiff was "emotionally drained," so Plaintiff "went to the emergency department at Vassar Bros. Hospital in Poughkeepsie." (*Id.* ¶ 40). The following week, Plaintiff "was too sore and upset to go to work." (*Id.* ¶ 41). Since the incident, Plaintiff "has experienced significant pain and received ongoing

treatment for neck, back and nerve injuries deriving from the officers' collective use of force," and Plaintiff "continues to experience severe neck and back pain and has sought and continues to receive treatment for these injuries which derived from" the incident. (*Id.* ¶¶ 38, 42). "Plaintiff also continues to feel traumatized" from the use of force and the alleged "racial profiling the interaction reflects." (*Id.* ¶ 43).

### III. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

### IV. DISCUSSION

Plaintiff brings claims under 42 U.S.C. § 1983 against Defendant Doyle for (1) excessive force or failure to intervene in violation of Plaintiff's Fourth Amendment rights and (2) intentional discrimination in violation of the Fourteenth Amendment's Equal Protection Clause. (*See* Dkt. No. 1, ¶¶ 45–48). Defendant Doyle seeks to dismiss Plaintiff's claims, arguing that Plaintiff relies impermissibly on group pleading and that Plaintiff fails to state a plausible equal protection claim. (Dkt. No. 13-1, at 4–9).

### A.     Group Pleading

Defendant Doyle moves to dismiss Plaintiff's § 1983 claims for violation of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments on the grounds that the Complaint "excessively and impermissibly relies on 'group pleading.'" (Dkt. No. 13-1, at 5). Defendant Doyle argues that Plaintiff's factual allegations surrounding the alleged incident are levied against "unspecified and unnamed" Defendants, and this alleged defect is fatal, Defendant Doyle argues, because the Complaint fails to provide notice of what unlawful conduct Defendant Doyle is alleged to have engaged in. (*Id.*). Plaintiff opposes Defendant Doyle's argument. (Dkt. No. 15, at 9–10).

"Group pleading"—that is, a pleading involving multiple defendants that "do[es] not differentiate which defendant was involved in the unlawful conduct" at issue, *see Ying Li v. City of New York*, 246 F. Supp. 3d 578, 598 (E.D.N.Y. 2017)—is generally impermissible under Federal Rule of Civil Procedure 8(a)(2). *See Solano v. New York*, No. 20-cv-1378, 2021 WL 4134793, at *6, 2021 U.S. Dist. LEXIS 171780, at *15 (N.D.N.Y. Sept. 10, 2021). Similarly, "[i]t is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). But a plaintiff "need not establish who, among a group of officers, directly participated in the attack and who failed to intervene." *Smith v. Sawyer*, 435 F. Supp. 3d 417, 441 (N.D.N.Y. 2020); *see also Green v. Garcia*, No. 18-cv-1745, 2020 WL 1467359, at *5, 2020 U.S. Dist. LEXIS 55164, at *14 (S.D.N.Y. Mar. 25, 2020) ("[C]ourts in the Second Circuit have allowed plaintiffs to use a flexible approach, recognizing the difficulty that plaintiffs may have in pleading who did what." (citation omitted)); *Munoz v. Martinez*, No. 03-cv-828, 2005 WL

6

1355094, at *4, 2005 U.S. Dist. LEXIS 48255, at *8 (S.D.N.Y. June 8, 2005) (dismissing excessive force claims because plaintiff failed to submit "some sort of evidence that the [defendant] was at the scene of the alleged assault.").

At this point of the case, Plaintiff need only allege that Defendant Doyle "[was] present on the night in question and participated in" the incidents at issue. *See John v. City of New York*, 406 F. Supp. 3d 240, 245 (E.D.N.Y. 2017); *Garcia*, 2020 WL 1467359, at *5, 2020 U.S. Dist. LEXIS 55164, at *14–15 ("For example, if [the] [p]laintiff were to state in the facts section of his Amended Complaint the names of each person 'who was present during the assault[], and that these [D]efendants *either* directly participated in the excessive force *or* failed to intervene,' such allegations would be sufficient to allege personal involvement." (third and fourth alterations in original) (citation omitted)). Plaintiff does so by alleging that Defendant Doyle was present during the incidents at issue, (Dkt. No. 1, ¶ 9), and identifying Defendant Doyle as participating in her arrest, (*id.* ¶ 30). Moreover, the Complaint identifies Defendant Doyle as either one of the "[t]wo Defendants [that] jumped on Plaintiff's back," or one of the officers that did not intervene. (*Id.* ¶¶ 31–33); *see John*, 406 F. Supp. 3d at 245 ("Plaintiff need only produce evidence that the Officer Defendants were present on the night in question and participated in his arrest.").

Furthermore, Plaintiff alleges that Defendant Doyle "decided to transport plaintiff and [her boyfriend] back to the Town police station," (*id.* ¶ 34), and further ties this act to Plaintiff's equal protection claim by alleging that "one of the officers told plaintiff that Doyle was a racist," that "defendant Doyle charged plaintiff with resisting arrest and obstructing governmental administration," and that "[b]y selectively and intentionally detaining plaintiff on account of her race when departmental practice in such circumstances is to write out and serve an appearance

7

ticket on any allegedly offending civilian, defendants violated the Equal Protection Clause of the Fourteenth Amendment," (*id*. ¶ 48).

The Court is therefore unpersuaded by Defendant Doyle's argument with respect to impermissible group pleading. Plaintiff sufficiently identifies Defendant Doyle's personal involvement and provides notice of the alleged wrongdoing with respect to all causes of action. Accordingly, Defendant Doyle's motion to dismiss on this ground is denied.

**B.     Equal Protection**

Defendant Doyle also moves to dismiss Plaintiff's second cause of action for intentional discrimination against Plaintiff in violation of the right to equal protection under the Fourteenth Amendment. (Dkt. No. 13-1, at 6). Plaintiff's equal protection claim centers on Defendant Doyle's decision to issue Plaintiff an appearance ticket after detaining and transporting Plaintiff to the Town of Lloyd Police Station instead of issuing the ticket where Plaintiff was parked. (Dkt. No. 1, ¶¶ 44, 48; Dkt. No. 15, at 10–12). This decision by Defendant Doyle, Plaintiff argues, was a departure from Town of Lloyd Police Department practice and was made because of Plaintiff's race. (Dkt. No. 1, ¶¶ 44, 48; Dkt. No. 15, at 10). Defendant Doyle argues that the Complaint lacks factual allegations sufficient to plausibly demonstrate Defendant Doyle's discriminatory racial animus and that Defendant Doyle's decision to issue the appearance ticket at the police station was within his discretion. (Dkt. No. 13-1, at 8; Dkt. No. 16, at 5–6). Plaintiff argues that Defendant Doyle, motivated by Plaintiff's race, acted contrary to departmental practice. (Dkt. No. 15, at 10–12).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.'" *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV,

8

§ 1). The Equal Protection Clause therefore "requires that the government treat all similarly situated people alike." *Andre-Rodney v. Hochul*, 618 F. Supp. 3d 72, 79 (N.D.N.Y. 2022) (citing *Harlen Assocs. v. Incorporated Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001)). "To state a race-based claim under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against [her] on the basis of [her] race." *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000). There are, however, "several avenues a plaintiff may take to plead intentional racial discrimination in violation of the Equal Protection Clause." *Jennings v. Decker*, 2021 WL 3471557, at *4, 2021 U.S. Dist. LEXIS 147552, at *12 (N.D.N.Y. Aug. 6, 2021). Relevant here, a plaintiff may show "that a facially neutral [] policy has been applied in an intentionally discriminatory race-based manner." *Towns v. Stannard*, 431 F. Supp. 3d 44, 66 (N.D.N.Y. 2019) (citing *Pyke v. Cuomo*, 258 F.3d 107, 110 (2d Cir. 2001)). To succeed on such a claim, a plaintiff must show that the application of the policy was motivated, at least in part, by racial discrimination. *See Ali v. Connick*, 136 F. Supp. 3d 270, 279 (E.D.N.Y. 2015) (first citing *Pyke*, 258 F.3d at 110, and then citing *United States v. City of Yonkers*, 96 F.3d 600, 612 (2d Cir. 1996)).

Here, Plaintiff's Fourteenth Amendment equal protection claim relies on Plaintiff's allegation that Defendant Doyle "selectively and intentionally" detained Plaintiff "on account of her race" and in so doing deviated from "departmental practice . . . to write out and serve an appearance ticket on any allegedly offending civilian." (Dkt. No. 1, ¶ 48).[2] But the only allegation with respect to any such policy—that it is "departmental practice in such

---

[2] Defendant Doyle initially argued that Plaintiff failed to identify that "similarly situated persons have been treated differently," as is required to establish certain other equal protection claims. (Dkt. No. 13-1, at 8). But where a plaintiff alleges that a "facially neutral law or policy has been applied in an intentionally discriminatory manner," the plaintiff "is not obligated to show a better treated, similarly situated group of individuals of a different race in order to establish a claim of denial of equal protection." *Pyke*, 258 F.3d 107, 110 (2d Cir. 2001).

9

circumstances . . . to write out and serve an appearance ticket on any allegedly offending civilian," (*id.* ¶ 48)[3]—is silent as to when and where departmental practice dictates such an appearance ticket should be written out and served.[4] And Plaintiff alleges that Plaintiff and her boyfriend did "receive[] appearance tickets" at the police station. (*Id.* ¶ 39). Thus, it is not clear from the Complaint how Defendant Doyle is alleged to have deviated from or otherwise engaged in disparate enforcement of the policy as alleged in the Complaint.[5] Therefore, Defendant Doyle's motion to dismiss Plaintiff's equal protection claim is granted.[6]

---

[3] "A [desk appearance ticket] is a document directing a person to 'appear in a designated local criminal court at a designated future time in connection with his alleged commission of a designated offense.'" *Zarkower v. City of New York*, 461 F. Supp. 3d 31, 38 (E.D.N.Y. 2020) (quoting N.Y. Crim. Proc. Law § 150.10(1)). "The [desk appearance ticket] procedure operates as an alternative to holding an arrestee in custody until arraignment." *Id.* (citation omitted). Upon the issuance of a desk appearance ticket, "the arrestee is released and must return to the criminal court at a future date for arraignment." *Bryant v. City of New York*, 404 F.3d 128, 132 (2d Cir. 2005).

[4] Plaintiff alleges that the appearance tickets "could have been handed to [Plaintiff and her boyfriend] in the first instance," (*id.* ¶ 39), but the policy, as alleged by Plaintiff, makes no mention of where or when appearance tickets are to be issued, (*see id.* ¶ 48).

[5] The Court notes that "[t]he decision to issue a [desk appearance ticket] in lieu of detention is discretionary," and "a plaintiff fails to state a [due process or unreasonable seizure] claim if she argues that her rights were violated because she was eligible for but was not issued a [desk appearance ticket]." *See Zarkower*, 461 F. Supp. 3d at 38–39; *see also Bryant*, 404 F.3d at 135–39 ("[W]e agree with the district court that defendants' conduct in denying [desk appearance tickets] did not reach the 'conscience-shocking level' that would be necessary to support a claim of denial of substantive due process, . . . [but] we affirm the dismissal under [the Fourth Amendment] framework." (citations omitted)). Here, however, Plaintiff does not assert a due process or unreasonable seizure claim premised on the non-issuance of a desk appearance ticket but instead asserts an equal protection claim reliant on Plaintiff's allegation that Defendant Doyle's racial animus led to the discriminatory enforcement of a departmental policy.

[6] Because the Court's dismissal of Plaintiff's equal protection claim turns on Plaintiff's allegations as to the purported departmental policy, the Court need not determine whether Plaintiff's lone allegation of Defendant Doyle's racial animus, (Dkt. No. 1, ¶ 35), is sufficient to state an equal protection claim. It does not, however, appear to be enough. *Compare Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 470 (2d Cir. 2006) (Sotomayor, J.) (affirming grant of motion to dismiss where the "complaint proffer[ed] only a conclusory allegation of discrimination, which, without evidentiary support or allegations of particularized incidents, [did] not state a valid claim." (internal quotation marks omitted)), *and Gaddy v. Ports Am.*, No. 13-cv-3322, 2015 WL 3929693, at *7, 2015 U.S. Dist. LEXIS 82086, at *21 (S.D.N.Y. June 15, 2015) ("A plaintiff's 'conclusory allegations of disparate treatment' and 'personal opinion that such treatment was motivated by discriminatory intent' are insufficient to state a Section 1983 intentional discrimination claim." (citation omitted)), *with Ali*, 136 F. Supp. 3d at 281 (denying summary judgment against the plaintiff where the plaintiff "alleged that [a defendant] intentionally discriminated against him based on his race or ethnicity, in violation of his right to equal protection" and in support of his claim, "offered testimony that [the defendant] used racial or ethnic slurs while subjecting him to excessive force"), *and Feliz v. City of New York*, No. 19-cv-6305, 2022 WL 446043, at *10 (S.D.N.Y. Feb. 14, 2022) (Nathan, J.) (denying a motion to dismiss an equal protection claim where the defendants used "racially derogatory language" subsequent to "arrest that, as alleged, was not supported by probable cause").

### C. Leave to Amend

Plaintiff also requests, in the event the Court grants Defendant Doyle's motion to dismiss, that she be given leave to file an amended complaint. (Dkt. No. 15, at 13). The Federal Rules of Civil Procedure provide that "leave to amend 'shall be freely given when justice so requires.'" *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (quoting Fed. R. Civ. P. 15(a)(2)). However, "leave to amend may be denied if . . . amendment would be futile." *Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) (citing *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006)). "Amendment is futile if it fails 'to cure prior deficiencies.'" *Id.* (quoting *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)). Plaintiff has not suggested how she would amend the Complaint, but in light of the fact that Plaintiff has requested leave to amend and has not yet had an opportunity to amend, the Court will permit amendment of the Complaint. Any amended complaint must be filed within twenty-one days of the date of this Memorandum-Decision and Order.

### V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant Doyle's motion to dismiss, (Dkt. No. 13), is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Defendant Doyle's motion to dismiss, (Dkt. No. 13), is **GRANTED** with respect to Plaintiff's Fourteenth Amendment equal protection claim, and Plaintiff's Fourteenth Amendment equal protection claim is **DISMISSED without prejudice**; and it is further

**ORDERED** that Defendant Doyle's motion to dismiss, (Dkt. No. 13), is otherwise **DENIED**; and it is further

**ORDERED** that any amended complaint must be filed within twenty-one days of the date of this Memorandum-Decision and Order.

**IT IS SO ORDERED.**

Dated: May 30, 2024
Syracuse, New York

*Brenda K. Sannes*
Brenda K. Sannes
Chief U.S. District Judge

12